UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTWANN GARRETT and <br> LAWRENCE MAXEY, individually, <br> and on behalf of all current and former <br> similarly situated welders, installers, <br> laborers and hourly employees, <br> <br>               Plaintiffs, <br> <br>    vs. <br> <br> AQUATIC RENOVATION <br> SYSTEMS, INC. d/b/a Renosys, <br> d/b/a RenoSys Corp., and <br> d/b/a Sauna Source, <br> <br>               Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   CAUSE NO. 1:19-cv-01509-SEB-TAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**AMENDED INDIVIDUAL, CLASS ACTION, AND FLSA COLLECTIVE
ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

The plaintiffs, Antwann Garrett ("Mr. Garrett") and Lawrence Maxey ("Mr. Maxey"), by counsel, for their Amended Individual, Class Action, and FLSA Collective Action Complaint for Damages and Injunctive Relief against the defendant, Aquatic Renovation Systems, Inc. d/b/a RenoSys, d/b/a RenoSys Corp., and d/b/a Sauna Source ("RenoSys"), allege and state as follows:

**INTRODUCTION**

1. This is an individual, class, and collective action complaint initiated by the plaintiffs against RenoSys as a result of RenoSys's practice and policy of failing to pay the plaintiffs and other similarly situated employees: (1) for all hours worked in violation of the Indiana Wage Payment Statute; (2) the prevailing wage required for public work projects in violation of the Indiana Wage Payment Statute; (3) overtime compensation at a rate of one and one-half times their regular rate of pay for weeks in which RenoSys failed to pay for all overtime

1

hours worked in violation of the Fair Labor Standards Act ("FLSA"); and (4) the correct overtime compensation at a rate of one and one-half times their regular rate of pay for weeks in which RenoSys failed to calculate the regular rate based upon the required prevailing wage and other amounts includable in the regular rate in violation of the FLSA.

## JURISDICTION

2. This Court has jurisdiction over the plaintiffs' individual and collective action FLSA claims pursuant to its federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the plaintiffs' individual and class action state law claims under 28 U.S.C. § 1367 because those claims are based upon the same core operative facts as the federal question claims.

3. Venue is proper in this District because RenoSys maintains its principal place of business, and conducts business, in this District and a substantial part of the payroll practices giving rise to these claims occurred in this District.

## PARTIES

4. At all relevant times herein, Mr. Garrett was an Indiana citizen who maintained his personal place of residence in Marion County, Indiana.

5. At all relevant times herein, Mr. Maxey was an Indiana citizen who maintained his personal place of residence in Marion County, Indiana.

6. At all relevant times herein, RenoSys was an Indiana corporation with a principal place of business at 2825 East 55th Place, Indianapolis, Indiana 46220.

## FACTUAL ALLEGATIONS

7. RenoSys is an Indiana corporation that sells and installs swimming pools, swimming pool liners, and an assortment of swimming pool products.

8. Mr. Garrett was employed by RenoSys as an installer or welder (as that position is understood in this industry, which uses PVC materials and a hot air welding process) on multiple occasions, with his most recent period of employment with RenoSys ending in May of 2018.

9. Mr. Maxey was employed by RenoSys as an installation crew member from April 2017 to May 2018.

10. Other similarly situated employees were employed by RenoSys on a similar basis as welders, installers, and laborers.

11. The plaintiffs and other similarly situated employees were paid on an hourly basis by RenoSys and were not exempt from the overtime provisions of the FLSA.

12. As welders and installers, the plaintiffs would travel across the United States installing or repairing swimming pools, swimming pool liners, and swimming pool parts on behalf of, and as directed by, RenoSys.

13. While on the road, RenoSys used a portal-to-portal system for time entry. That is, crew members were considered to be "on the clock" from the time they left their hotel or motel in the morning until they returned to their lodging establishment in the evening.

14. Starting in approximately 2018, RenoSys's welders, installers, and installation crew members recorded their hours electronically through a web-based application known as Tsheets. Before Tsheets, RenoSys's welders, installers, and installation crew members wrote their hours on time sheets and either faxed them to the payroll manager or took a picture of the time sheets and sent the picture to the payroll manager by text or email.

15. A crew leader like Mr. Garrett was responsible for entering his own hours as well as the hours of the members of his crew. As a matter of general practice, because crew members traveled to and from jobsites together while on the road, the work hours for the crew leader and

the crew members were the same and were based on the above-mentioned portal-to-portal practice.

16.   Given the nature of RenoSys's business, which is frequently driven by contract completion deadlines, it was not unusual for the plaintiffs and other similarly situated employees to work more than 40 hours in a workweek. Although the plaintiffs cannot point to any specific workweek in which they worked more than 40 hours without access to their old payroll records, they know it was not uncommon.

17.   For much of the time period relevant to this lawsuit, RenoSys maintained an electronic payroll system for which each employee had a user ID and password such that the employee could access their payroll information, but RenoSys did not otherwise distribute paystubs or payroll reports to the employees. Many times, the plaintiffs and those situated similarly to them did not access this electronic payroll system or print copies of their paystubs.

18.   Tsheets also includes a GPS capability that demonstrates the physical location of the crew such that the GPS can validate the amount of time the crew was on the jobsite or in transit to and from the jobsite.

19.   Tsheets also enables the employer to modify or adjust the hours entered by the employees by either increasing or decreasing them before the hours are entered into the payroll system.

20.   RenoSys, as a matter of routine practice, regularly reduced the hours entered on behalf of the employees such that employees were paid for fewer hours than they actually worked.

21.   Employees, including the plaintiffs, regularly complained to RenoSys management about their paychecks being too low, about their hours being shorted, or about

RenoSys business expenses being improperly deducted from their wages. Although RenoSys sometimes adjusted paychecks in response to complaints like these, many times it did not and left the inaccurate paychecks stand uncorrected.

22. Former administrative personnel for RenoSys have stated that RenoSys regularly manipulated its payroll. Said personnel confirmed that RenoSys would reduce the hours reported by employees through Tsheets or otherwise, that employees would complain about these reductions, and that sometimes RenoSys would correct the complaining employees' checks and sometimes RenoSys would not make corrections.

23. Former administrative personnel for RenoSys have stated that RenoSys maintains a profit and loss statement for each job it performs (the "P&Ls"). The P&Ls include a payroll summary for each job that shows the employees on the job, the hours reported on the job, the hours paid on the job, and the total payroll expense for the job. Said personnel have stated that anyone seeking to identify specific examples of when employees were not paid properly for all hours worked could do so through comparing the P&Ls against the Tsheets data, the GPS data, the payroll data, and the certified payroll reports RenoSys submitted on prevailing wage jobs (collectively, the "Records"), all of which is in the exclusive possession and control of RenoSys.

24. The Records show that the plaintiffs and other similarly situated employees worked more than 40 hours in a workweek, were not paid at the proper rate for all hours worked, and reflect the improper adjustments to and deductions from the plaintiffs' and the other employees' paychecks.

25. Further, for prevailing wage jobs, RenoSys had a regular practice of underpaying employees. RenoSys would issue paychecks for prevailing wage jobs that did not include the full amount of the prevailing wage. The named plaintiffs specifically experienced this practice on

5

prevailing wage jobs involving the City of Chicago, as well as at other jobs in Illinois and Ohio. Sometimes RenoSys would later issue a second paycheck for the week in question. At times, this second payment, when it was made, was untimely under Indiana law.

26. For example, for the week ending March 25, 2018, with a pay date of March 30, 2018, Mr. Garrett and Mr. Maxey were working on a prevailing wage job for the City of Chicago at a prevailing wage of $68.67 per hour. RenoSys initially paid Mr. Garrett and Mr. Maxey in the amount of $41.20 per hour for their work on that job that week. Sometime later, RenoSys issued a second paycheck for the same workweek at a wage rate of $27.47 per hour. In this example, RenoSys eventually made the full payment of the prevailing wage, albeit in two checks, but the plaintiffs are unable to validate they were paid properly on all occasions because they lack access to the Records. The plaintiffs highlight this example because it arises out of the limited number of copies of paystubs they have in their possession.

27. RenoSys also deducted hotel expenses from employees' wages on prevailing wage jobs, including from the plaintiffs' wages on the prevailing wage project for the City of Chicago described above. RenoSys made these deductions without a valid wage assignment or other authorization under state or federal law.

28. As a result of RenoSys's manipulation of the hours reported by its employees, the process by which it paid employees on prevailing wage jobs, and the unlawful deductions RenoSys made from its employees paychecks, RenoSys failed to pay the plaintiffs and other similarly situated employees in a timely manner for all hours worked, including overtime hours, at the appropriate rate of pay, including the appropriate overtime rate when applicable.

29. In May 2018, RenoSys personnel were observed recycling, removing, or shredding payroll information and employee timekeeping information (the "Destroyed

6

Documents"). It is not presently known whether the Destroyed Documents were copies of information of otherwise electronically stored information or whether the Destroyed Documents were original documents RenoSys was obligated by federal law to maintain and preserve.

30. In approximately July of 2018, an attorney for Mr. Garrett went to RenoSys and looked at one or two examples of Mr. Garrett's paychecks to get an understanding of the issues with RenoSys's payroll practices. Mr. Garrett's attorney did not undertake a comprehensive review of Mr. Garrett's pay history with RenoSys and made no admissions against Mr. Garrett's interests with respect to the matters presented in this lawsuit.

31. RenoSys demanded that the plaintiffs and other similarly situated employees not talk to other individuals at these prevailing wage jobsites about the amount they made per hour.

32. RenoSys demanded that the employees not speak with Department of Labor investigators at these prevailing wage jobsites.

33. Upon information and belief, RenoSys required some employees to sign a nondisclosure agreement regarding RenoSys's prevailing wage payment policies and practices.

34. In early 2018, RenoSys offered Mr. Garrett (in addition to the terms and conditions of his employment) a bonus payment plan which included a $5,000 bonus and profit sharing privileges.

35. Mr. Garrett accepted RenoSys's bonus payment plan and profit sharing.

36. Mr. Garrett performed all conditions precedent to earning and receiving this bonus and profit sharing.

37. RenoSys failed to pay Mr. Garrett his bonus, and RenoSys failed to pay Mr. Garrett his portion of the profit sharing.

38. RenoSys reports that it accepted Mr. Garrett's and Mr. Maxey's resignation in May 2018. RenoSys withheld and failed to pay the plaintiffs their final paychecks, which is a violation of the minimum wage requirements of the FLSA and Indiana's wage payment laws.

39. RenoSys knowingly and willfully engaged in the above-mentioned violations.

## COUNT ONE
### (Individual Indiana Wage Payment Statute)

40. The plaintiffs incorporate by reference all preceding paragraphs as if fully stated herein.

41. RenoSys violated provisions of the Indiana Wage Payment Statute (Indiana Code § 22-2-5-1 *et seq.*) by failing to pay the plaintiffs timely for all hours worked, making improper deductions, and by failing to pay the plaintiffs all wages earned in a timely manner.

42. RenoSys further violated provisions of the Indiana Wage Payment Statute by failing to pay the plaintiffs their correct wages earned and due in a timely manner pursuant to the prevailing wage required at certain jobsites.

43. RenoSys further violated provisions of the Indiana Wage Payment Statute by failing to pay Mr. Garrett his $5,000 bonus, by failing to pay Mr. Garrett his profit sharing, and by failing to pay the plaintiffs their last paychecks.

44. By way of this claim, the plaintiffs are seeking, individually, all available damages, including all unpaid wages, the difference between the wage paid and the required prevailing wage, available liquidated damages (an amount equal to two times the unpaid wages), all attorneys' fees, costs, and expenses, plus any other damage to which the plaintiffs may be entitled pursuant to law.

45. RenoSys's practices and policies leading to its failure to pay the plaintiffs their wages owed pursuant to the Indiana Wage Payment Statute constitutes bad faith actions.

## COUNT TWO
### (Class Action Indiana Wage Payment Statute)

46. The plaintiffs incorporate by reference all preceding paragraphs as if fully stated herein.

47. Mr. Garrett and Mr. Maxey are named plaintiffs whose Indiana statutory wage claims arise under the Indiana Wage Payment Statute and are plaintiffs who represent the same or similar interest of all current and former welders, installers, laborers, and similarly situated employees of RenoSys over the last three years.

48. By way of this claim, the plaintiffs are seeking, individually and on behalf of members of the plaintiff class of current or former employees of RenoSys, all available damages, including all unpaid wages, the difference between the wage paid and the required prevailing wage, amounts improperly deducted from paychecks, available liquidated damages (an amount equal to two times the unpaid wages), all attorneys' fees, costs, and expenses, plus any other damage to which the plaintiffs may be entitled pursuant to law.

49. Pursuant to Indiana Trial Rule 23(A), the plaintiffs are the appropriate class representatives:

A. The plaintiffs are unable to state at this time the exact size of the potential class, but upon information and belief, aver that it consists of at least 50 people when current and former employees are included. The class of individuals represented by the plaintiffs is so numerous that joinder of all members is impracticable.

B. The class of individuals the plaintiffs represent has questions of law and fact that are common to the plaintiffs' claims, and these commonalities stem from the same common nucleus of operative facts which is evidenced by RenoSys's common course of conduct.

    C.    The legal theories, claims, or defenses the plaintiffs have against RenoSys are typical and similarly situated to the legal theories, claims, or defenses of the class they seek to represent, and their claims are in no way in conflict with or antagonistic to the claims of the class they seek to represent.

    D.    The plaintiffs will fairly and adequately protect the interest of the class they seek to represent, they have a sufficient interest in the outcome of this matter to ensure vigorous adequacy, and counsel for the plaintiffs is sufficiently experienced, competent, qualified, and able to conduct the proposed litigation vigorously.

50.    Pursuant to Indiana Trial Rule 23(B), this matter is appropriate for a class action:

    A.    The prosecution of separate actions by or against members of the class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class, and adjudications with respect to individual members of the class would be dispositive of the interest of the other members not parties to the adjudications and would substantially impair or impede their ability to protect their own interests.

    B.    Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

51.    RenoSys's practices and policies leading to its failure to pay the plaintiffs and all of their fellow class members their wages owed pursuant to the Indiana Wage Payment Statute constitutes bad faith actions.

## COUNT THREE
## (Individual FLSA Overtime & Minimum Wage Claim)

52. The plaintiffs incorporate by reference all preceding paragraphs as if fully stated herein.

53. At all relevant times, the plaintiffs were employees within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

54. RenoSys is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and RenoSys is a "person" as that term is defined under the FLSA, 29 U.S.C. § 203(a).

55. At all relevant times herein, RenoSys was an "enterprise" within the meaning of 29 U.S.C. § 203(r).

56. At all relevant times herein, RenoSys was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

57. At all relevant times herein, the plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207 in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

58. During the relevant time period, RenoSys violated the provisions of Section 7 of the FLSA, 29 U.S.C. § 207, by employing the plaintiffs for workweeks longer than 40 hours without compensating the plaintiffs for their employment in excess of 40 hours per week at a rate not less than one and one-half the regular rate of pay for which they were employed.

59. By failing to pay the plaintiffs their last paychecks, RenoSys failed to pay them at least the minimum wage for the workweek in question.

60. RenoSys has acted willfully, or with reckless disregard, in failing to pay the plaintiffs in accordance with the law. Accordingly, the FLSA's three-year statute of limitations should apply.

61. By way of this claim, the plaintiffs seek all available damages, including unpaid minimum wage and overtime compensation, liquidated damages, payment of reasonable attorneys' fees, costs and expenses, and any and all other damages to which they may be entitled for RenoSys's violations of their rights under the FLSA.

### COUNT FOUR
### (FLSA Collective Action Overtime Claim)

62. The plaintiffs incorporate by reference all preceding paragraphs as if fully stated herein.

63. Mr. Garrett and Mr. Maxey are named plaintiffs with FLSA claims and represent the same or similar interests of all current or former employees of RenoSys in the same or similar job classifications.

64. The class which the plaintiffs seek to represent and for whom they seek the right to send "opt-in" notices for purposes of the collective action, and of which the plaintiffs are themselves members, is composed of and defined as all current and former welders, installers, laborers, and similarly situated employees of RenoSys over the last three years.

65. The plaintiffs are unable to state at this time the exact size of the potential class, but upon information and belief, aver that it consists of at least 50 people, including current and former employees.

66. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation and damages. In addition to the plaintiffs, numerous current and former employees are similarly situated with regard to their

12

wages and claims for unpaid wages and damages. The plaintiffs' claims are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

67. These similarly situated employees are known to RenoSys and are readily identifiable through RenoSys's records. These individuals may readily be notified of this action, and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims.

68. The plaintiffs and the similarly situated collective class share similar factual and employment settings, and similar legal theories, claims, and defenses.

69. At all relevant times, the plaintiffs were employees within the meaning of the FLSA, 29. U.S.C. § 203(e)(1), as are the similarly situated employees.

70. RenoSys is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and RenoSys is a "person" as that term is defined under the FLSA, 29 U.S.C. § 203(a).

71. At all relevant times herein, RenoSys was an "enterprise" within the meaning of 29 U.S.C. § 203(r).

72. At all relevant times herein, RenoSys was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

73. At all relevant times herein, the plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§206-207 in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

74. During the relevant time period, RenoSys violated the provisions of Section 7 of the FLSA, 29 U.S.C. § 207, by employing the plaintiffs and other similarly situated employees for workweeks longer than 40 hours without compensating them for their employment in excess of 40 hours per week at a rate not less than one and one-half the regular rate of pay for which they were employed.

75. RenoSys has acted willfully, or with reckless disregard, in failing to pay the plaintiffs and these similarly situated employees in accordance with the law. Accordingly, the FLSA's three-year statute of limitations should apply.

76. By way of this claim, the plaintiffs and the class they represent seek all available damages, including unpaid overtime compensation, liquidated damages, payment of reasonable attorneys' fees, costs and expenses, and any and all other damages to which they may be entitled for RenoSys's violations of their rights under the FLSA.

77. Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## COUNT V
### (Individual Breach of Contract Claims)

78. The plaintiffs incorporate by reference all preceding paragraphs as if fully stated herein.

79. The plaintiffs' employment relationship with RenoSys was contractual in nature.

80. To the extent any payments due to the plaintiffs as a result of their employment with RenoSys are deemed not to be a wage under Indiana law, RenoSys is nevertheless contractually obligated to make those payments to the plaintiffs.

81. RenoSys's failure to make any such payments to the plaintiffs is a breach of contract.

82. The plaintiffs have been damaged by RenoSys's breach of contract.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs, and all those similarly situated, pray that this Court enter judgment against RenoSys and issue all available relief to the plaintiffs and those similarly situated, including but not limited to:

A. All damages available under the Indiana Wage Payment Statute, including all unpaid wages, all liquidated damages, and payment of attorneys' fees, costs, and expenses;

B. All unpaid minimum wage and overtime compensation under the FLSA, plus all available liquidated damages, attorneys' fees, costs, and expenses;

C. All damages available based on RenoSys's breach of contract;

D. All pre- and post-judgment interest at the maximum statutory rate;

E. Issue an order permitting this litigation to proceed as a class and collective action;

F. Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all class members that this litigation is pending and that they have the right to "opt in" to this litigation;

G. An injunction effective to prevent RenoSys from continuing its unlawful wage practices which violate the Indiana Wage Payment Statute and the FLSA, including all policies/practices whereby RenoSys fails to pay employees for hours worked, fails to pay employees the required prevailing wage, fails to pay to employees full overtime compensation, and makes impermissible deductions from employees' wages; and

H. Award the plaintiffs and the class further and additional relief as this Court deems just and proper under the circumstances, including attorneys' fees, costs, and litigation expenses.

## **REQUEST FOR JURY TRIAL**

The plaintiffs request a jury trial on all claims so triable.

Respectfully submitted,

/s/ *Andrew M. McNeil*
Andrew M. McNeil (#19140-49)
Tyler J. Moorhead (#34705-73)

Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000; (317) 684-5173 (Fax)
AMcNeil@boselaw.com
TMoorhead@boselaw.com

*Attorneys for Plaintiffs, Antwann Garrett and Lawrence Maxey*

3602702